UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>ATLAS AIR WORLDWIDE HOLDINGS, INC., ATLAS AIR, INC., POLAR AIR CARGO, INC., AIRLINE ACQUISITION CORP. I, AND ATLAS WORLDWIDE AVIATION LOGISTICS, INC.,<br><br>Debtors. | Case Nos. 04-10792-BKC-RAM through 04-10796-BKC-RAM<br><br>(Jointly Administered under Case No. 04-10792-BKC-RAM)  |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF POLAR AIR CARGO, INC.,<br><br>Appellant,<br><br>v.<br><br>ATLAS AIR WORLDWIDE HOLDINGS, INC., ATLAS AIR, INC., POLAR AIR CARGO, INC., AIRLINE ACQUISITION CORP. I, AND ATLAS WORLDWIDE AVIATION LOGISTICS, INC.,<br><br>Debtors. | 04-CV-20898  |

**MEMORANDUM OF LAW IN SUPPORT OF
THE AD HOC COMMITTEE OF CLASS A CERTIFICATE HOLDERS'
MOTION FOR ENTRY OF AN ORDER AUTHORIZING INTERVENTION
PURSUANT TO SECTION 24 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Certain holders of Series A Pass-Through Trust Certificates (the "**Class A Certificate Holders**," a majority in interest of which comprise the "**Ad Hoc Committee**"), by and through their undersigned counsel, hereby submit this Memorandum of Law in support of the Ad Hoc Committee's motion (the "**Motion**") for an order authorizing the Ad Hoc Committee to intervene



in all matters related to the Debtors' chapter 11 cases before the District Court for the Southern District of Florida (the "**District Court**"), including, but not limited to, (i) the Motion for Stay Pending Appeal of the Official Committee of Unsecured Creditors of Polar Air Cargo, Inc. (the "**Polar Committee**") for a stay of the orders of the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") approving the Deferred Rent DIP Facility, the Senior DIP Facility, and the EETC Stipulations (the "**Polar Stay Motion**") and (ii) the Polar Committee's appeal of the same (the "**Polar Appeal**").[1] In support of its Motion, the Ad Hoc Committee respectfully represents and states as follows:[2]

---

[1] More specifically, the Polar Committee is appealing the following: (1) Order Authorizing Postpetition Secured Superpriority Financing under Bankruptcy Code Sections 105(a) and 364(c) Regarding Deferred EETC Lease/Equipment Note Obligations (Bankruptcy Docket No. 450); (2) Final Order Authorizing the Debtors to Enter into Postpetition Financing Agreement and Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Granting Liens, Security Interests and Superpriority Claims (Bankruptcy Docket No. 445); (3) Order Granting Motion for Approval of Separate EETC Stipulations with Wilmington Trust Company (As Indenture Trustee) and the Ad Hoc Committee Under 11 U.S.C. § 1110(b) Regarding Atlas Owned Aircraft (Bankruptcy Docket No. 488); (4) Order Granting Motion for Approval of Stipulations with Various Aircraft Lenders or Lessors Under 11 U.S.C. § 1110(b) (Bankruptcy Docket No. 487); (5) Order Granting Motion for Approval of Separate EETC Stipulations with Wells Fargo Bank Northwest, NA. (As Owner Trustee) and Wilmington Trust Company (As Indenture Trustee) Under 11 U.S.C. § 1110(b) (Bankruptcy Docket No. 492); (6) Order Granting Motion for Approval of Stipulation and Order Providing for Section 1110(b) Extension Regarding Aircraft Agreements with Respect to Aircraft Tail Numbers N355MC, N536MC and N540MC and Certain Engines (Bankruptcy Docket No. 486); (7) Order Granting Motion for Approval of EETC Stipulations Under 11 U.S.C. § 1110(b) with Wells Fargo Bank Northwest, NA. (As Owner Trustee) and Wilmington Trust Company (As Indenture Trustee) Regarding Boeing 747-47UF Aircraft, Tail Numbers N491MC and N493MC (Bankruptcy Docket No. 490); (8) Order Granting Motion for Approval of EETC Stipulation Under 11 U.S.C. § 1110(b) with Wells Fargo Bank Northwest, NA. (As Owner Trustee) and Wilmington Trust Company (As Indenture Trustee) Regarding Boeing 747-400 Aircraft, Tail Number N496MC (Bankruptcy Docket No. 489); (9) Order Granting Motion for Approval of EETC Stipulation Under 11 U.S.C. § 1110(b) with Wilmington Trust Company (As Indenture Trustee) Regarding Boeing 747-400 Aircraft, Tail Number N409MC (Bankruptcy Docket No. 491); (10) Order Granting Motion for Approval of a Stipulation and Order Providing for Section 1110(b) Extension Regarding Aircraft Agreements with Respect to Aircraft Tail Numbers N505MC, N509MC, N512MC, N517MC, N522MC, N523MC, N524MC, N527MC, N528MC, N534MC, N808MC and N809MC and Two (2) Engine Pools (Bankruptcy Docket No. 484).

[2] To the extent that capitalized terms are used herein and not otherwise defined, they shall have the meaning set forth in the EETC Stipulation and the Deferred Rent DIP Motion.

## BACKGROUND

### A. The EETC Structure

1. The EETC transactions involve twelve EETC 747-400 aircraft (the "**EETC Aircraft**"). Each EETC Aircraft is equipment within the meaning of section 1110(a)(3) of the United States Bankruptcy Code, title 11 of the United States Code (the "**Bankruptcy Code**") and, therefore, creditors providing financing in connection with the EETC Aircraft are entitled to the benefits accorded by section 1110 of the Bankruptcy Code. Each aircraft's record owner issued equipment notes in three tranches (designated as A, B & C) to finance a majority of each aircraft's cost on a nonrecourse basis. Equity investors, known as "owner participants," financed the remainder of the cost of each of the ten leased aircraft. Atlas Air, Inc. ("**Atlas**") leases ten of the EETC Aircraft from their record owners, each an "owner trustee." Atlas is the outright owner of the remaining two EETC aircraft. The equipment notes for the two Atlas-owned aircraft are fully recourse to Atlas and assume the same structure as described above with respect to the ten leased EETC aircraft.

2. Liens on the EETC Aircraft secure the equipment notes. The Class A Certificate Holders, by a majority vote under the operative documents, control the decision to foreclose the liens.

3. The debt evidenced by the equipment notes was funded under three separate transactions in 1998 (five aircraft), 1999 (five aircraft), and 2000 (two aircraft) in which public enhanced equipment trust certificates (the "**Certificates**") were issued to investors that provided financing for the EETC Aircraft. Similar to the equipment notes, the Certificates were issued under the trusts (each a pass-through trust) in A, B, and C tranches. The equipment notes are held for the benefit of the pass-through trusts.

4.  The Class A Certificate Holders are effectively and beneficially "secured" parties for whose benefit the equipment notes, and all collateral therefor (including mortgages of the aircraft), were issued and granted (the "**EETC Transactions**").[2]

5.  After a default under the documents evidencing the EETC Transactions, the holders of a majority of the Class A Certificates have broad powers as to the use or disposition of the EETC Aircraft.

## B. Restructuring Negotiations

6.  In or about April 2003, at the request of Atlas, holders of a majority in interest of the Class A Certificates formed the Ad Hoc Committee to address certain concerns regarding Atlas's financial condition.

7.  Thereafter, in July 2003, Atlas failed to make certain lease payments and defaulted under the EETC agreements. Following the July default, Atlas and the Ad Hoc Committee entered into an agreement which, among other things, provided for the Class A Certificate Holders to forbear, on the conditions set forth in such agreement, from exercising remedies prior to September 30, 2003. This forbearance date was periodically extended as negotiations continued.

8.  Negotiations continued between Atlas, the Ad Hoc Committee, and various EETC trustees regarding a term sheet executed and delivered on September 12, 2003 (as amended from time to time and as more specifically detailed in the EETC Stipulations, the "**EETC Term**

---

[2] The Debtors have provided a summary description of the financial and legal structure of the EETC Transactions as Exhibit A to the Deferred Rent DIP Motion (Bankruptcy Docket No. 96).

(:\DOCS\1585665.1

**Sheet")**[4/] which ultimately contemplated certain amendments to the EETC leases and related documents in light of the Debtors' inability to pay the contract rent and other principal payments as they became due. Among other things, the heavily negotiated EETC Term Sheet required that the stipulations under section 1110 (the "**EETC Stipulations**")[5/] generally provide for (a) Atlas's continued use of the EETC Aircraft for a set period of time upon the satisfaction of certain conditions, (b) the payment of reduced rent on the EETC Aircraft during the bankruptcy case, and (c) permitting Atlas to satisfy its obligation under section 1110 to cure certain defaults by obtaining credit through the deferral of the aggregate amount of approximately $21.7 million in rent that was due pre-petition and that, absent that extension of credit, would have had to be paid on or before March 30, 2004, the end of the sixty-day period provided under section 1110 (the "**EETC Deferred Rent**").

9. The parties negotiated provisions of the EETC Stipulations permitting the financing of the EETC Deferred Rent through the implementation of a debtor-in-possession financing facility under section 364 of the Bankruptcy Code (the "**Deferred Rent DIP**

---

[4/] The parties negotiated a term sheet for each of the 1998, 1999 and 2000 EETC Transactions. Each of the term sheets is similar in all material respects and shall collectively be referred to as the "EETC Term Sheet."

[5/] The Class A Certificate Holders and the Debtors entered into stipulations for each of the twelve EETC aircraft. The following motions for approval of the EETC Stipulations were filed: (i) Motion for Approval of Separate EETC Stipulations with Wells Fargo Bank Northwest N.A. (as Owner Trustee) and Wilmington Trust Company (as Indenture Trustee) under 11 U.S.C. § 1110(b) (Bankruptcy Docket No. 166); (ii) Motion for Approval of EETC Stipulation under 11 U.S.C. § 1110(b) with Wilmington Trust Company (as Indenture Trustee) Regarding Boeing 747-400 Aircraft, Tail Number N409MC (Bankruptcy Docket No. 164); (iii) Motion for Approval of EETC Stipulations under 11 U.S.C. § 1110(b) with Wells Fargo Bank Northwest N.A. (as Owner Trustee) and Wilmington Trust Company (as Indenture Trustee) Regarding Boeing 747-47UF Aircraft, Tail Numbers N491MC and N493MC (Bankruptcy Docket No. 165); (iv) Motion for Approval of EETC Stipulation under 11 U.S.C. § 1110(b) with Wells Fargo Bank Northwest N.A. (as Owner Trustee) and Wilmington Trust Company (as Indenture Trustee) Regarding Boeing 747-400 Aircraft, Tail Number N496MC (Bankruptcy Docket No. 167); and (v) Motion for Approval of Separate EETC Stipulations with Wilmington Trust Company (as Indenture Trustee) and the Ad Hoc Committee under 11 U.S.C. § 1110(b) Regarding Atlas Owned Aircraft (Bankruptcy Docket No. 173).

**Facility"**). Under section 1110, after a statutorily mandated 60-day period, secured creditors are permitted to act to exercise their rights and remedies unless a debtor before the end of that period has, among other things, cured monetary defaults. But for the Deferred Rent DIP Facility, the Debtors would have been required to pay approximately $21.7 million to the lessors on or before March 30, 2004 to cure certain monetary defaults as a precondition to continued use of the EETC Aircraft after such date. The Debtors advised the Bankruptcy Court that they wanted and needed to retain the use of the EETC Aircraft but that they did not possess the funds necessary to cure the approximately $21.7 million payment shortfall before the expiration of the 60-day period set forth in section 1110. Thus, only through the Deferred Rent DIP Facility could they retain the use of the EETC Aircraft. *See* Bankruptcy Court Transcript of March 12 & 15, 2004 at 167 (relevant portions of which are attached to the Declaration of Michael J. Reilly in Support of the Ad Hoc Committee of Class A Certificate Holders' Motion for Entry of an Order Authorizing Intervention Pursuant to Section 24 of the Federal Rules of Civil Procedure (the "**Declaration**") as Exhibit A) (the "**Transcript**").

10. On March 12, 2004 and March 15, 2004 the Bankruptcy Court, with Judge Mark presiding, held a hearing on, among other things, Debtors' motions to approve (1) the EETC Stipulations and (2) the Deferred Rent DIP Facility. The Bankruptcy Court heard testimony from, among others, William Bradley, vice-president and treasurer of Debtors Atlas, Polar Air Cargo, Inc., and Atlas Air Worldwide Holdings, Inc. ("**Holdings**"), Ron Lane, senior vice-president and chief marketing officer of Holdings, Wake Smith, senior vice-president of planning and business development for Holdings, and Eric Mendelsohn of Lazard Freres, and ultimately approved the EETC Stipulations and the Deferred Rent DIP Facility. The Bankruptcy Court found the EETC Stipulations and the Deferred Rent DIP Financing to be in the best interests of

the Debtors' estates and proposed business plan and necessary given the protections provided to lessors of aircraft in section 1110 of the Bankruptcy Code. *See* Transcript at 651-52, 659.

11. On March 26, 2004, the Polar Committee filed a notice of appeal of, among other things, the orders approving the Deferred Rent DIP Facility and the EETC Stipulations. Polar has not yet docketed the appeal before this Court.

12. On April 15, 2004, the Polar Committee filed the Polar Stay Motion with this Court.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 158 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure (the "**FRCP**") provides that intervention may be (i) as of right, under FRCP 24(a), or (ii) permissive, under FRCP 24(b).[6] The Ad Hoc Committee submits that it may intervene as of right to protect its undisputed interests in the

---

[6] The relevant portions of FRCP 24 provide:
(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

CHDOCS 1585665 1

EETC Aircraft under FRCP 24(a)(2). Alternatively, the Ad Hoc Committee should be allowed to intervene permissibly pursuant to FRCP 24(b). Following intervention, the Ad Hoc Committee will have the right to file its own papers and to argue before this Court on all matters related to the above-captioned case. *See In re Adelphia Communications Corp.*, 285 B.R. 848, 856 (Bankr. S.D.N.Y. 2002) (outlining the rights of intervenors in an adversary proceeding under the Bankruptcy Code).

### A. The Instant Application is Timely

Motions to intervene under FRCP 24 must be "timely." "'Timeliness' is not a word of exactitude or of precisely measurable dimensions. . . . It must, rather, 'be determined from all the circumstances.'" *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1496 (S.D. Fla. 1991) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970) and *NAACP v. New York*, 413 U.S. 345, 366 (1973)) (citations omitted).

In determining whether a motion to intervene is timely, courts consider "(1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of the prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely." *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).

Here, the Ad Hoc Committee's application under FRCP 24 is clearly timely both in a chronological sense, and because it does not prejudice existing parties to the Polar Stay Motion. The Ad Hoc Committee filed the Motion within eight business days of the District Court's

docketing of the Polar Stay Motion. Surely, under the circumstances, such a motion is timely in every sense of the word. Moreover, the Ad Hoc Committee has been and remains to be a necessary and active participant in the underlying bankruptcy proceedings. The Ad Hoc Committee is a signatory to the EETC Stipulations and a party in the negotiations which resulted in the EETC Stipulations and Deferred Rent DIP Facility. Furthermore, the Ad Hoc Committee's intervention will not prejudice the Debtors, as upon information and belief they consent to the Ad Hoc Committee's participation, nor the Polar Committee, as they should anticipate the Ad Hoc Committee's intervention given the interests at stake and the Ad Hoc Committee's status as a party to the EETC Stipulations.[7]

## B. The Ad Hoc Committee is Entitled to Intervention as of Right

Intervention as of right pursuant to FRCP 24(a) may be invoked by either (i) "an unconditional right to intervene" granted by a statute of the United States or (ii) "an interest relating to the property or transaction which is the subject of the action."

### 1. Section 1109(b) provides the Ad Hoc Committee with a statutory right to intervene.

Section 1109(b) of the Bankruptcy Code provides the Ad Hoc Committee with an unconditional right to intervene in the Polar Stay Motion and all other matters related to the Debtors' chapter 11 cases before this Court. *See generally* LAWRENCE P. KING, 7 COLLIER ON BANKRUPTCY ¶ 1109.01 at 1109-4 (15th ed. rev. 2003) (explaining scope and purpose of section 1109) (hereinafter, "COLLIER"). Courts have found that section 1109(b) "plainly grants a right to raise, appear and be heard on *any issue* regardless whether it arises in a contested matter or an

---

[7] The Ad Hoc Committee requested the Polar Committee to join the Ad Hoc Committee as a party to the Polar Stay Motion and Polar Appeal. The Polar Committee declined the Ad Hoc Committee's request.

adversary proceeding." *In re Caldor Corp.*, 303 F.3d 161, 169 (2d Cir. 2002) (following the Third Circuit's decision in *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir. 1982) and finding that section 1109(b) provides an unconditional right to intervene) (emphasis in original); *see also Gleason v. Commonwealth Cont'l Health Care (In re Golden Glades Reg'l Med. Ctr., Ltd.)*, 147 B.R. 813, 816 (Bankr. S.D. Fla. 1992) (permitting intervention by a single unsecured creditor pursuant to FRCP 24(a)(1)); *see also* COLLIER ¶ 1109.04[2][d] at 1109-32-33 (adopting view that section 1109(b) provides right to intervene under Rule 7024 of the Federal Rules of Bankruptcy Procedure).

The broad right conveyed to parties in interest under section 1109(b) is applicable to appellate court issues as well as to issues arising in bankruptcy cases. *See Southern Pac. Transp. Co. v. Voluntary Purchasing Group*, 227 B.R. 788, 792-93 (E.D. Tex. 1998) (stating that the case "does not cease being a 'case under Chapter 11' merely because appellate jurisdiction has been invoked" and that "[n]othing in . . . [section 1109(b)] suggests that its broad right to appear and be heard is inapplicable to proceedings held before an appellate court."). In *Southern Pacific*, the court denied a motion to require the debtor and the unsecured creditors' committee to file a joint brief appealing confirmation of the plan. *See id.* The court found that section 1109(b) provided the committee the right to participate in its own capacity in the appeal because "the [c]ommittee fully participated in the confirmation hearing before the bankruptcy court and had a clear right to do so under the Bankruptcy Code." *See id.* at 793.

### 2. The Ad Hoc Committee has an interest in property which is the subject of the appeal.

In addition to being a "party in interest" under section 1109(b), the Ad Hoc Committee also possesses "an interest relating to the property or transaction which is the subject of the action" as set forth in FRCP 24(a)(2).

Under FRCP 24(a)(2), the applicant must meet four requirements: "(1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) the applicant must demonstrate that his interest is represented inadequately by the existing parties to the suit." *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982); *see also, e.g., Loyd v. Alabama Dept. of Corrections*, 176 F.3d 1336, 1339-40 (11th Cir. 1999). The applicant's interest in the proceedings must be "'direct, substantial, [and] legally protectible.'" *Loyd v. Alabama Dept. of Corrections*, 176 F.3d 1336, 1340 (11th Cir. 1999) (quoting *Worlds v. Dep't of Health & Rehabilitative Servs.*, 929 F.2d 591, 594 (11th Cir. 1991).

The Ad Hoc Committee is entitled to intervention as of right under FRCP 24(a)(2) due to its (i) timely filing of the Motion, (ii) affected property interest and active involvement in the bankruptcy proceeding, and (iii) interests which are necessarily divergent with those of the Debtors. Moreover, the Debtors consent to the Ad Hoc Committee's participation in the Polar Stay Motion. *See In re Caldor Corp.*, 303 F.3d 161, 164 (2d Cir. 2002) (noting that the debtor urged the bankruptcy court to grant the committee's motion to intervene).

### C. The Committee is Alternatively Entitled to Permissive Intervention

Although the Ad Hoc Committee believes that it is entitled to intervene in the Polar Stay Motion and all other proceedings before the District Court as a matter of right, in the alternative, the Ad Hoc Committee submits that it is entitled to permissive intervention under FRCP 24(b)(2). Permissive intervention pursuant to FRCP 24(b)(2) may be granted on grounds of "fairness and judicial economy." COLLIER ¶ 1109.03[5][b] at 1109-22; *see generally SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972) ("Rule 24(b) necessarily vests broad

CHDOCS 1585665 1

discretion in the district court to determine the fairest and most efficient method of handling a case with multiple parties and claims.").

The Ad Hoc Committee's intervention would not prejudice the rights of the original parties and will not delay the adjudication of the Polar Stay Motion. *See Gleason v. Commonwealth Cont'l Health Care (In re Golden Glades Reg'l Med. Ctr., Ltd.)*, 147 B.R. 813, 816 (Bankr. S.D. Fla. 1992).

Furthermore, the EETC Stipulations and the Deferred Rent DIP Facility are essential components to the Debtors' reorganization and business plan. But for these agreements, the lessors of the EETC Aircraft will have no choice but to direct the indenture trustee to take possession of the aircraft equipment as provided for in section 1110. Without the EETC Aircraft, the Debtors' business operations cannot continue, and these chapter 11 cases will become liquidations. *See* Transcript at 73-79, 259-61. It is undisputed that the EETC 747-400's are the newest and more efficient aircraft in the Debtors' fleet. *See* Transcript at 259-61.

The Ad Hoc Committee also notes that FRCP 24(c) requires a pleading to accompany a motion to intervene "setting forth the claim or defense for which intervention is sought." The Ad Hoc Committee respectfully submits that its (a) Memorandum of Law in Support of Debtors' Motions (1) for Approval of Twelve EETC Stipulations Under 11 U.S.C. § 1110(b) and (2) for Final Order Authorizing Certain Debtors to Obtain Postpetition Secured Financing Under 11 U.S.C. §§ 105(a) and 364(c) Regarding Deferred EETC Lease/Equipment Note Obligations, which is attached to the Declaration as Exhibit B, and (b) Omnibus Reply to Objections to the Debtors' Motions (1) For Approval of Twelve EETC Stipulations Under 11 U.S.C. § 1110(b) and (2) For Final Order Authorizing Certain Debtors to Obtain Postpetition Secured Financing Under 11 U.S.C. §§ 105(a) and 364(c) Regarding Deferred EETC Lease/Equipment Note Obligations, which is attached to the Declaration as Exhibit C, fulfills this liberal requirement.

-12-

*See WJA Realty Ltd P'ship v. Nelson*, 708 F. Supp. 1268, 1272 (S.D. Fla. 1989) (granting intervention despite the failure to file the accompanying pleading because the spirit of the rule (adequate notice, etc.) was satisfied in other ways); *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985) (disregarding the failure to file a complaint pursuant to FRCP 24(c) as a "nonprejudicial technical defect[]" especially where all the other parties knew the applicant's substantive arguments); *see also Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002) ("Where, however, the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements.") (citing *Werbungs Und Commerz Union Austalt v. Collectors' Guild Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991)); *SEC v. Downe*, No. 92 Civ. 4092, 1993 WL 22126, at *12 n.8 (S.D.N.Y. Jan. 26, 1993) (finding papers filed fulfilled substance of Rule 24(c) requirements and provided adequate notice to the defendants as to the grounds for the motion to intervene despite the motion containing no pleading pursuant to Rule 24(c)).

## CONCLUSION

Wherefore, the Ad Hoc Committee respectfully requests that this Court (i) allow the Ad Hoc Committee to intervene specifically in the Polar Stay Motion, the Polar Appeal and generally for all other purposes related to the Debtors' chapter 11 cases before this Court, and (ii) grant the Ad Hoc Committee such other and further relief as is just and proper.

April 27, 2004

Respectfully submitted:

**BINGHAM McCUTCHEN LLP**

Michael J. Reilly (*pro hac vice* pending)
Patrick J. Trostle
One State Street
Hartford, CT 06103
(860) 240-2700
(860) 240-2800 (fax)
michael.reilly@bingham.com
patrick.trostle@bingham.com

Peter Schellie (*pro hac vice* pending)
1120 20th Street
Suite 800
Washington, DC 20036
(202) 778-6150
(202) 778-6155 (fax)
peter.schellie@bingham.com

—and—

**GREENBERG TRAURIG P.A.**

Luis Salazar (Fla. Bar No. 147788)
1221 Brickell Ave.
Miami, FL 33131
(305) 579-0500
(305) 579-0717 (fax)
salazarl@GTLaw.com

Counsel to the Ad Hoc Committee of
Class A Certificate Holders

CHDOCS 1585665 1